UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| RYAN ARSENAULT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:24-cv-00022-JAW |
| | ) | |
| ONE CALL LOGISTICS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON MOTION TO DISMISS**

A purchaser of a tiny house sues a transportation broker for breach of contract, negligence, and a violation of the Maine Unfair Trade Practices Act. The broker moves the Court to dismiss the breach of contract claim for failure to state a claim and the negligence and statutory claims because they are preempted by the Federal Aviation Administration Authorization Act of 1994. The Court grants the motion as to the breach of contract claim, grants the motion as to the Maine Unfair Trade Practices Act, and denies in part and dismisses in part as to the common law negligence claim.

## I.   PROCEDURAL BACKGROUND

On December 14, 2023, Ryan Arsenault filed a complaint against One Call Logistics, LLC (One Call) in the Oxford County Superior Court in the state of Maine. *State Ct. R. and Aff.* (ECF No. 2), Attach. 2, *State Ct. Compl.* (*Compl.*). In the complaint, Mr. Arsenault brought three claims against One Call: breach of contract, negligence, and a violation of the Maine Unfair Trade Practices Act. *Id.* at 1-4. Mr. Arsenault attached the agreement he entered with One Call to his complaint. *State*

*Ct. R. and Aff.*, Attach. 3, *Customer Transp. Arrangement Contract* (*Contract*).   On

January 26, 2024, One Call filed a notice of removal from the Oxford County Superior

Court to this Court, the United States District Court for the District of Maine.   *Notice*

*of Removal* (ECF No. 1).

On January 29, 2024, One Call moved to dismiss for failure to state a claim.

*Def. One Call Logistics, LLC's Mot. to Dismiss* (ECF No. 4) (*Def.'s Mot.*).   On February

20, 2024, Mr. Arsenault opposed the motion.   *Resp. in Opp'n* (ECF No. 7) (*Pl.'s Opp'n*).

One Call replied on March 4, 2024.   *Def. One Call Logistics, LLC's Reply in Support*

*of its Mot. to Dismiss* (ECF No. 8) (*Def.'s Reply*).

## II.   BACKGROUND[1]

### A.   The Allegations in the Complaint

In the spring of 2023, Ryan Arsenault, a resident of Hanover, Maine,

purchased a custom-built Tiny House in Millheim, Pennsylvania.   *Compl.* ¶¶ 1, 5.

The Tiny House needed to be transported from Pennsylvania to Maine.   *Id.* ¶ 6.   Mr.

Arsenault searched online for a transportation company able to provide that service

and found One Call's website.   *Id.* ¶ 7.   He then discussed the Tiny House

transportation with One Call by telephone and email, and at all times One Call falsely

assured Mr. Arsenault that it and its drivers and carriers were fully licensed and

insured.   *Id.* ¶ 8, 17.   Unaware of the misrepresentation, Mr. Arsenault entered into

---

[1]      Consistent with the motion to dismiss standard, the Court relied on the complaint's well-pleaded facts.   "[T]he court must distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'"   *García-Catalán v. United States*, 734 F.3d 100, 103 (1st Cir. 2013) (quoting *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012)); *see also Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (stating that a court may "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements").

a Contract, dated May 26, 2023 and executed on June 5, 2023, with One Call for transportation of his Tiny Home. *Id.* ¶ 9, 18.

Mr. Arsenault alleges One Call then subcontracted the actual transportation of the Tiny House to Yaniel Transportation, LLC ("Yaniel") of Tampa, Florida. *Id.* ¶ 10. The Tiny House was picked up in Pennsylvania pursuant to the Contract. *Id.* ¶ 11. On or about June 28, 2023, while being transported to Maine, the driver of the transport vehicle lost control and struck the guardrail and another car, causing a crash during which the trailer carrying the Tiny House overturned, totally destroying the Tiny House. *Id.*

Mr. Arsenault made a claim for the loss of his Tiny House with One Call but was informed that, contrary to One Call's representations, the subcontracted carrier had no insurance for the loss and the driver of the transport vehicle did not have a commercial driver's license. *Id.* ¶ 12. Mr. Arsenault has demanded payment for damages he suffered, but One Call has refused. *Id.* ¶ 14, 15. Mr. Arsenault sent a settlement demand letter with a 30-day deadline to One Call, but One Call refused and neglected to reply to the demand. *Id.* ¶ 20.

**B.   The Legal Theories in the Complaint**

Mr. Arsenault's complaint consists of three counts: (1) Count One alleges that One Call breached its contract with him, (2) Count Two alleges that One Call violated the Maine Unfair Trade Practices Act, 5 M.R.S. §§ 205-A-214, and (3) Count Three alleges that One Call was negligent, that One Call owed a duty of care to Mr. Arsenault in transporting his Tiny Home, that One Call breached the duty of good

faith and fair dealing that it owed Mr. Arsenault in transporting his Tiny Home, and that One Call breached its duty by hiring an unqualified vendor. *Id.* ¶¶ 5-29.

## III.   THE PARTIES' POSITIONS

### A.   One Call's Motion to Dismiss

One Call contends that Count I, the breach of contract claim, "should be dismissed" because "when accepting the terms of the contract as true, it can be ascertained that One Call cannot be held liable for breach of the contract's terms." *Def.'s Mot.* at 1.  One Call argues that Counts II and III, claims for violation of the Maine Unfair Trade Practices Act and common-law negligence, "should also be dismissed because those counts are preempted by federal law." *Id.*

#### 1.   Breach of Contract

One Call represents that "[d]espite Plaintiff's assertions that One Call had a contractual obligation to provide licensed and insured transportation for his Tiny House, those obligations are nowhere to be found in the contract." *Id.* at 2-3.  One Call maintains that "the terms 'licensed' and 'insured' do not appear in the contract." *Id.* at 3.  One Call then cites to other Contract provisions that it contends "expressly disclaimed One Call's liability under the circumstances alleged in the complaint." *Id.* One Call advances that "[t]here is no … mutual assent in the parties' contract" that licensed and insured transportation was part of the bargain. *Id.* at 4.

#### 2.   Preemption: Maine Unfair Trade Practices Act

After outlining the general principles of federal preemption, *id.* at 4-5, One Call avers that the Federal Aviation Administration Authorization Act of 1994 (FAAAA) "established that state regulation of the trucking industry, including freight

forwarders and brokers is preempted." *Id.* at 5 (citing 49 U.S.C. § 14501(c)(1); and discussing *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364 (2008)).

One Call says "[i]t is undisputed that [it] is a transportation broker and acted only as a transportation broker for Plaintiff." *Id.* at 7 (citing *Compl.* ¶ 9; *Contract*). One Call points out that federal statute preempts state regulations that have "the force and effect of law related to a *price, route, or service* of any motor carrier . . . or any motor private carrier, *broker*, or freight forwarder with respect to the transportation of property." *Id.* (quoting 49 U.S.C. § 14501(c)(1)) (emphasis in *Def.'s Mot.*).

One Call says Mr. Arsenault's "allegations go directly to the services rendered by a transportation broker and seek to dictate the way One Call, as a broker, selects a motor carrier, and imposing liability under Maine's Unfair Trade Practices Act has the potential to affect the services of One Call." *Id.* at 7. "Thus, Maine's Unfair Trade Practices Act meets the 'related to' test, and in this case, it concerns the transportation of property, as Plaintiff seeks to recover damages from alleged representations regarding the licensure and insurance status of the motor carrier." *Id.* at 7-8. Taken together, One Call contends Mr. Arsenault's "state law claim for violation of Maine's Unfair Trade Practices Act, due to its direct relation to the services provide by One Call as a broker and involving the transportation of Plaintiff's property, is expressly preempted." *Id.* at 8.

### 3.    Preemption: Negligence

Preliminarily, One Call reiterates that it "is a transportation broker per the express language in the agreement between it and Plaintiff as well as the definition

set forth at 49 U.S.C. § 13102(2)." *Id.* One Call submits that "[l]ike the Unfair Trade Practices claim, Plaintiff's negligence claim is not one under which Congress has carved out an exception to 49 U.S.C. § 14501(c)(1)'s applicability." *Id.* (citing 49 U.S.C. § 14501(c)(2)(A)-(C)).

One Call takes issue with Mr. Arsenault's charge of negligence in the transportation of the goods via its "agent"; it is One Call's position that it "acted solely as the broker arranging transportation of the goods." *Id.* (citing *Contract*). One Call then represents that "[s]everal Courts throughout the United States have held that negligence claims against brokers for damage to goods in transit are preempted by 49 U.S.C. § 14501(c)(1)." *Id.* at 9 (citing *Ameriswiss Tech., LLC v. Midway Line of Ill., Inc.*, 888 F. Supp. 2d 197 (D.N.H. 2012) (collecting cases)). Finally, One Call analogizes the present case to a Northern District of Texas decision, *id.* at 9-10 (discussing *Chatelaine, Inc. v. Twin Modal, Inc.*, 737 F. Supp. 2d 638 (N.D. Tex. 2010)), to conclude that Mr. Arsenault's "state-law negligence claim, due to its direct attempt to regulate the services provided by One Call as a broker and involving the transportation of the property, is expressly preempted by 49 U.S.C. § 14501(c)(1)." *Id.* at 10.

## B.    Ryan Arsenault's Opposition

Mr. Arsenault asks the Court to "deny Defendant's motion," *Pl.'s Opp'n* at 1, because One Call's arguments "lack merit." *Id.* at 2.

### 1.    Breach of Contract

Mr. Arsenault points the Court to One Call's website, on which he alleges One Call advertises the following terms: "We pledge to meet all the requirements for

6

transportation services in Maine.  Rest assured, all our drivers are licensed, insured and knowledgeable." *Id.*  Mr. Arsenault looks to the Uniform Commercial Code (UCC) for the principle that unless a court finds the writing in an agreement to have been intended to be a complete and exclusive statement of the agreement's terms, "extrinsic evidence may be used to explain or supplement the writing, in the form of course of dealing, trade usage, and 'by evidence of consistent additional terms.'"  *Id.* (quoting *Allpattah Servs., Inc. v. Exxon Corp.*, 61 F. Supp. 2d 1308, 1314 (S.D. Fla. 1999)).  Given this background, Mr. Arsenault contends that "Defendant's approach fails to acknowledge the potential for extrinsic evidence to explain, supplement, or indeed, reveal consistent additional terms of the agreement." *Id.* at 3.  Therefore, Mr. Arsenault says, "Defendant's argument that the absence of specific contract terms should defeat Plaintiff's claims as a matter of law is premature." *Id.* at 4.

### 2. Preemption

Mr. Arsenault concedes the "Motor Carrier Act, 49 U.S.C. § 1450(c)(1), preempts state law claims 'related to a price, route, or service of any motor carrier . . . or any motor private carrier, broker, or freight forwarder.'" *Id.* at 4 (quoting *Complete Coach Works v. Landstar Ranger, Inc.*, No. CV 10-1383-DSF (OPX), 2011 U.S. Dist. LEXIS 156417, at *2 (C.D. Cal. Apr. 13, 2011)).  But he counters that despite courts' broad interpretations of the phrase "related to," "the term 'service' is defined relatively narrowly." *Id.* (quoting *Complete Coach Works*, 2011 U.S. Dist. LEXIS 156417, at *3).  So narrowly, Mr. Arsenault insists, that "[n]egligence claims, which operate to impose a general duty of care on market participants across industries, are sufficiently attenuated from the regulation of prices, routes, or

services in the transportation industry to avoid preemption." *Id.* at 4-5 (citing *Covenant Imaging, LLC v. Viking Rigging & Logistics, LLC*, No. 3:20-CV-00593 (KAD), 2021 U.S. Dist. LEXIS 49000, at *19 (D. Conn. Mar. 16, 2021)). Mr. Arsenault argues that his "grievances concern primarily the quality and reliability of the service promised and paid for, not the aspects of service regulation that the Motor Carrier Act chiefly aims to deregulate to foster competition." *Id.* at 5. Therefore, he maintains, "these claims are properly within the purview of state law and should not be dismissed on the grounds of preemption by the Motor Carrier Act." *Id.* at 6.

Mr. Arsenault also analogizes this case to *Ted's of Fayville, Inc. v. Koffi*, 452 F. Supp. 3d 1 (D. Mass. 2020) and argues that preemption only applies if the law at issue "also concerns a motor carrier's transportation of property." *Id.* (quoting *Ted's of Fayville*, 452 F. Supp. 3d at 4). As "the violation of the Maine Unfair Trade Practices Act occurred prior to the transportation," Mr. Arsenault contends it "is not centered around the actual transportation of the tiny home, but rather whether the advertisements and representations . . . were deceptive and unfair trade practices." *Id.* at 7.

### C.   One Call's Reply

#### 1.   Breach of Contract

One Call reiterates that the contract is unambiguous and cannot be altered by extrinsic evidence. *Def.'s Reply* at 1. One Call says, "there is no language addressing the requirement that any transportation arranged by One Call must be licensed and insured." *Id.* It adds that Mr. Arsenault's complaint alleges the representation that One Call would be licensed and insured was made in verbal and email

communications, *id.*, without so much as alleging those representations "formed part of the contract." *Id.* at 2. One Call asserts that "although there is no integration clause, all the essential terms are set forth in Exhibit A [the contract], and there is no facial ambiguity. Thus, the parole evidence rule applies." *Id.* Moreover, One Call says that "Plaintiff's citations to provisions of the Uniform Commercial Code are inapposite with respect to extrinsic evidence, for this was unquestionably an agreement for services . . . and not a transaction in goods." *Id.* at 3 (citing *Lincoln Pulp & Paper Co., Inc. v. Dravo Corp.*, 436 F. Supp. 262, 275 (D. Me. 1977)). Therefore, One Call believes that Mr. Arsenault's breach of contract claim should be dismissed because it "is predicated solely on a requirement missing from the contract." *Id.*

### 2. Preemption

One Call rejoins that "[t]he cases cited by Plaintiff in support of its position . . . are not in line with the interpretation of FAAAA preemption by the First Circuit, and Plaintiff's claims do impact the services offered by One Call as a broker." *Id.*

Regarding *Complete Coach Works*, One Call contends "the facts of *Works* are distinguishable from the present case." *Id.* at 4. For support, One Call points out that "in addition to alleging that One Call was negligent via the transportation of the Tiny Home, Plaintiff alleges that One Call was negligent in failing to be insured against its loss of Plaintiff's Tiny Home." *Id.* (citing *Compl.* ¶ 28). One Call says that the allegations about the transportation "go directly to the services offered by One Call (i.e.[,] its selection of carriers), and the allegations regarding lack of insurance go directly to the services offered by One Call as a broker (i.e.[,] whether it elects to

carry insurance)." *Id.* at 4. By One Call's estimation, "the broad approach taken by the First Circuit would provide that these allegations of negligence have an impact, even if only indirectly, on the services offered by One Call." *Id.*

One Call then contends that *Covenant Imaging*, another case Mr. Arsenault relied on, is inapposite. *Id.* One Call notes that the *Covenant Imaging* Court took "a narrower approach to preemption, acknowledging that other courts have taken a broader approach yet stating the court had no direction from the Second Circuit on the specific issue." *Id.* (citing *Covenant Imaging*, 2021 U.S. Dist. LEXIS 49000, at *5-6). One Call says this is irrelevant, however, because "this Court must look to First Circuit precedent concerning preemption" and "the First Circuit in *Massachusetts Delivery Association v. Healey*, 821 F. 3d 187 (1st Cir. 2016), has adopted a broad view of preemption." *Id.* One Call then adds that "[o]ther district courts within the First Circuit have adopted this same broad view and have preempted negligence causes of actions against brokers arising from damage to the Plaintiff's property during transport." *Id.* at 5 (citing *Ameriswiss*, 888 F. Supp. 2d 197).

Finally, One Call argues *Ted's of Fayville* is distinguishable because it "dealt with storage fees" while "the present claims deal with the insurance representations by One Call as they relate to its carriers." *Id.* As a result, One Call says, the present "claims relate to services provided by One Call, as they involve the representations by One Call as to the insurance status of its carriers[, which] . . . . impacts the way in which brokers investigate and select transportation carriers." *Id.* Finally, One Call cites *Fahrenbach* for the proposition that the "related to" test is "an intentionally

expansive one . . . the FAAAA has broad preemptive effect and generally warrants the dismissal of tort claims based on state law." *Id.* (quoting *Fahrenbach v. Green Planet Movers*, 682 F. Supp. 3d 109, 112 (D. Mass. 2023)).

## IV.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) requires dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To state a claim, a complaint must contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). In other words, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plausible means "'something more than merely possible' or 'merely consistent with a defendant's liability.'" *Germanowski v. Harris*, 854 F.3d 68, 71-72 (1st Cir. 2017) (internal citation omitted) (quoting *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012)); *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 11 (1st Cir. 2011)). This is a "'context-specific' job that compels [judges] 'to draw on' [their] 'judicial experience and common sense.'" *Schatz*, 669 F.3d at 55 (quoting *Iqbal*, 556 U.S. at 679).

Reviewing for failure to state a claim is a "two-step analysis." *Cardigan Mountain Sch. v. N.H. Ins. Co.*, 787 F.3d 82, 84 (1st Cir. 2015). "First, the court must

distinguish 'the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited).'" *García-Catalán v. United States*, 734 F.3d 100, 103 (1st Cir. 2013) (quoting *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012)); *see also Schatz*, 669 F.3d at 55 (stating that a court may "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements"). "Second, the court must determine whether the factual allegations are sufficient to support 'the reasonable inference that the defendant is liable for the misconduct alleged.'" *García-Catalán*, 734 F.3d at 103 (quoting *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011)).

## V.   DISCUSSION

The Court begins by addressing a couple of preliminary issues.

First, a note on the scope of the record. "Ordinarily, a court ruling on a motion to dismiss may only consider whether the factual allegations within the four corners of the plaintiff's complaint state a plausible claim for relief." *James D. Julia, Inc. v. Dan Murphy Auctions, LLC*, No. 1:21-cv-00025-JAW, 2021 U.S. Dist. LEXIS 115124, at *21 (D. Me. June 21, 2021) (citing *Doe v. Pawtucket Sch. Dep't*, 969 F.3d 1, 8 (1st Cir. 2020)). That said, "when, as now, a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." *Id.* at 21-22 (quoting *Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 17 (1st Cir. 1998)). As the

breach of contract claim turns on the terms of the contract between the parties, the Court considers the contract attached by Mr. Arsenault, which he admits is authentic and One Call does not challenge.  *See Def.'s Mot.* at 2 ("The Court must assume, at this procedural stage, that the terms of the contract between the parties are those set forth in Exhibit A to the complaint as Plaintiff alleges").

Second, the Court notes that it is sitting in diversity jurisdiction.  *See* 28 U.S.C. § 1332.  The complaint states that Mr. Arsenault is a Maine resident, that One Call is a corporate person with a principal place of business in Florida, with a sole member who resides in Florida, that the transporting company, Yaniel, is also a Florida corporation, and that Yaniel picked up the Tiny House in Pennsylvania.  *Compl.* ¶¶ 1, 2, 10, 11.  These limited facts present a choice of law issue that the parties do not address comprehensively.[2]

A federal court sitting in diversity jurisdiction must apply the choice-of-law rules of the state in which it sits.  *Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.*, 313 U.S. 487, 496 (1941).  The District of Maine sits in the state of Maine, so the Court must apply Maine's choice-of-law rules.  Maine has adopted the Restatement (Second) Conflict of Laws' most significant contacts and relationships approach, *Zelman v. Zelman*, 2020 ME 138, ¶ 16, 242 A.3d 1111, 1115 n.6, in both tort actions and contract disputes.  *See, e.g.*, *Flaherty v. Allstate Ins. Co.*, 2003 ME 72, ¶ 16, 822 A.2d 1159 (for

---

[2]    In its Motion to Dismiss, One Call noted "[t]here may be a question as to what state's contract law applies in this case, but fundamental principle ought not to vary among jurisdictions."  *Def.'s Motion* at 3 n.2.  In its reply, One Call states that the Contract "does not contain a choice of law provision."  *Def.'s Reply* at 2 n.1.  By its estimation, given that "Plaintiff is a resident of Maine and that the Tiny House was being delivered to Maine, Maine law likely applies."  *Id.*

tort actions); *State Farm Mut. Auto. Ins. Co. v. Koshy*, 2010 ME 44, ¶¶ 46-50, 995 A.3d 651 (for contract disputes).   Instead of applying this approach with limited factual development and legal analysis presented by the parties, the Court has accepted the parties' assumption that Maine law applies. To the extent that, if raised, the substantive law of another state should be applied and the result would be different, the parties have waived that issue for purposes of the pending motion.   *See Rocafort v. IBM Corp.*, 334 F.3d 115, 121 (1st Cir. 2003) (applying doctrine of waiver to claims seeking the application of a foreign state's laws); *Ortiz v. Gaston Cnty. Dyeing Mach. Co.*, 277 F.3d 594, 597 (1st Cir. 2022) (waiving a choice-of-law argument brought first during post-judgment motions).

With that preface, the Court turns to the merits of the motion.

## A.     Breach of Contract

"Under Maine law, to recover under a breach of contract claim, a plaintiff must establish '(1) breach of a material contract term; (2) causation; and (3) damages.'" *Tate & Lyle Ingredients Ams., Inc. v. Transp. Distrib., LLC*, 746 F. Supp. 2d 189, 196 (D. Me. 2010) (quoting *BlueTarp Fin., Inc. v. E. Materials Corp.*, Civil No. 08-324-P-S, 2009 U.S. Dist. LEXIS 66672, at *57 (D. Me. July 24, 2009); *accord Tobin v. Barter*, 2014 ME 51, ¶10, 89 A.3d 1088.

Specifically at issue here is whether One Call breached its Contract with Mr. Arsenault "to provide fully insured and licensed transportation for his family's tiny house from Pennsylvania to Andover, Maine in June of 2023."  *Pl.'s Opp'n* at 1.

14

One Call counters that "those obligations are nowhere to be found in the contract." *Def.'s Mot.* at 2-3.  Instead, One Call claims "[t]he contract expressly disclaimed One Call's liability under the circumstances alleged." *Id.* at 3.

Mr. Arsenault retorts that One Call's "approach fails to acknowledge the potential for extrinsic evidence to explain, supplement, or indeed, reveal consistent additional terms of the agreement." *Pl.'s Opp'n* at 3.  Here, Mr. Arsenault seeks to introduce extrinsic evidence of the fact that, in verbal and email communications, he was assured the transporter would be fully insured and licensed.  Therefore, Mr. Arsenault says, "Defendant's argument that the absence of specific contract terms should defeat Plaintiff's claims as a matter of law is premature." *Id.* at 4.

One Call rejoins that "[a]lthough there is no integration clause, all the essential terms are set forth in Exhibit A [the contract], and there is no facial ambiguity.  Thus, the parole evidence rule applies," such that no extrinsic evidence may be considered in determining the specific terms of the contract. *Def.'s Reply* at 2.

In short, One Call believes that Mr. Arsenault's breach of contract claim should be dismissed because it "is predicated solely on a requirement missing from the contract." *Id.* at 3.  The Court, thus, begins its analysis with the Contract's text.

### 1.    The Customer Transportation Arrangement Contract

Mr. Arsenault entered into a Customer Transportation Arrangement Contract with One Call drafted on May 26, 2023. *Contract.*  The Contract states:

> One Call Logistics, LLC agrees to the arrangement of transportation services (brokerage) for the above unit/units.  This contract is a legally binding agreement between One Call Logistics, LLC and Ryan

15

Arsenault.   Please confirm the signature on the last page of this
document after reviewing ALL terms and conditions.   If you have any
questions, please call or email us directly.

*Id.* at 1.  The "unit" is also specified in the contract, a "Custom Tiny House Bumper

Pull" to be picked up during the third week of June in Millheim, Pennsylvania and

delivered to Andover, Maine in exchange for $3,500.   *Id.*   The Contract, after

discussing surcharges for paying with a credit card, states:

> By signing this contract, you agree to pay the amount above for the
> arrangement of transportation services that One Call Logistics, LLC
> will be arranging.   You agree that One Call Logistics, LLC does not
> assume the liability of a motor carrier, as it is not such.  By signing this
> contract, you understand that One Call Logistics LLC is a property
> goods broker and is solely responsible for arranging the transportation
> of your property goods by a property goods motor carrier within our
> network.   One Call Logistics, LLC shall not be held liable for loss or
> damage (including loss of use) of above listed item(s) if item(s) fail to be
> delivered by the carrier assigned to transport the item(s).   Failure of
> delivery includes events incurred by thefts, acts of nature, and/or
> negligence by the assigned motor carrier.
> . . .
>
> One Call Logistics, LLC is NOT responsible for ANY damage to the
> inside or outside of any unit(s), of any type, including total loss.  If your
> unit is being picked up from a manufacturer, it is their responsibility to
> make sure everything is secure.   By signing this agreement, you fully
> understand that One Call Logistics, LLC (a transportation broker) is not
> responsible for any damage to the inside or outside of any unit during
> transport.

*Id.* (emphasis in original).  Finally, the last paragraph of the Contract states:

> You agree not to dispute these charges with your financial institution,
> and you understand that One Call Logistics, LLC is a property goods
> broker and is solely responsible for arranging the transportation of your
> property goods by a property goods motor carrier within our network.
> You agree that One Call Logistics, LLC shall not be held liable for any
> damage(s) or loss incurred during transport by a motor carrier
> arranged/assigned by One Call Logistics, LLC.

16

*Id.* at 3.  The Contract then includes what appears to be Mr. Arsenault's signature above his name and a date of signing, June 5, 2022.[3]  *Id.*

### 2.     Whether the Contract is Ambiguous

"The interpretation of an unambiguous writing must be determined from the plain meaning of the language used and from the four corners of the instrument without resort to extrinsic evidence."  *Keep v. Indorf*, 2024 ME 14, ¶ 22, 314 A.3d 141 (quoting *Portland Valve, Inc. v. Rockwood Sys. Corp.*, 460 A.2d 1383, 1387 (Me. 1983)).  That said, "when the contract language is ambiguous and the ambiguity does not disappear when examined in the context of other provisions in the instrument, it is proper for the factfinder to entertain extrinsic evidence casting light upon the intention of the parties with respect to the meaning of the unclear language."  *Id.* (quoting *T-M Oil Co., Inc. v. Pasquale*, 388 A.2d 82, 85 (Me. 1978)).

In his own words, Mr. Arsenault sued One Call "for breach of its contract with him to provide fully insured and licensed transportation for his family's tiny house from Pennsylvania to Andover, Maine in June of 2023."  *Pl.'s Opp'n* at 1.  However, a review of the Contract does not show that Mr. Arsenault and One Call entered a contract to that effect.  Instead, the Contract repeatedly states that One Call is merely acting as a broker.  *See Contract* at 1, 3.

---

[3]     The Contract also includes other provisions not relevant to the Court's analysis of the present motion.  For example, the Contract includes a section called **"Breach, Damages, & Non-Payment,"** which states that "[i]n the event of a breach by the customer and a lawsuit need be filed, the venue for the lawsuit will be in Volusia County, Florida.  In the event of any dispute or claim, the prevailing company is liable for attorney fees."  *Contract* at 2 (emphasis in original).  The Contract then has a force majeure clause, *id.* at 2-3, a cancellation and refund policy, and an authorization to charge Mr. Arsenault's credit card.  *Id.* at 3.

On the first page, the Contract states that "One Call Logistics, LLC agrees to the *arrangement of transportation services (brokerage)* for the above unit/units." *Contract* at 1 (emphasis supplied). While the phrase "arrangement of transportation services" could possibly be misread to mean that One Call would be the transporter, the parenthetical term of brokerage precludes any confusion on the nature of services provided.

A brokerage "is the business or office of a broker" or a "broker's fee." *Brokerage*, BLACK'S LAW DICTIONARY (12th ed. 2024). A broker, in turn, is one "engaged for another . . . to negotiate contracts relating to property in which he or she has no custodial or proprietary interest" or "[a]n agent who acts as an intermediary or negotiator, especially between prospective buyers and sellers; a person employed to make bargains and contracts between other persons in matter of trade, commerce, or navigation." *Broker*, BLACK'S LAW DICTIONARY (12th ed. 2024).

One Call arranged a transportation service for Mr. Arsenault's property, his Tiny House; it did so as an intermediary without any custodial or proprietary interest. These facts align with the terms of the Contract. On the face of the Contract, it is clear that One Call held itself out to be a broker that performed a brokerage service.

Other Contract terms support this conclusion. For example, later on the first page, the Contract states:

> You agree that One Call Logistics, LLC *does not assume the liability of a motor carrier, as it is not such.* By signing this contract, you understand that *One Call Logistics LLC is a property goods broker and is solely responsible for arranging the transportation of your property* goods by a property goods motor carrier within our network.

18

*Id.* (emphasis supplied). A motor carrier is an entity that "provid[es] motor vehicle transportation." 49 U.S.C. § 13102(14). By signing the Contract, Mr. Arsenault represented his understanding and agreement that One Call was not the transporter. The following sentence then reiterates that One Call "is a property goods broker and *solely responsible* for arranging the transportation . . . by a property goods motor carrier." *Contract* at 1 (emphasis supplied). This disclaimer is found again on the third page of the Contract. *Id.* at 3 ("[Y]ou understand that One Call Logistics, LLC is a property goods broker and is solely responsible for arranging the transportation of your property goods by a property goods motor carrier within our network").

The plain meaning of the terms used in the Contract make it clear that One Call contracted to be a broker, not motor carrier, for Mr. Arsenault. Thus, it is unnecessary for the Court to "resort to extrinsic evidence" on this issue. *Keep*, 2024 ME 14, ¶ 22, 314 A.3d 141.

That does not end the Court's inquiry, however, as One Call could still have breached their obligations as a broker under the Contract. Mr. Arsenault's claim, then, becomes that One Call, as a broker, failed to contract with a fully insured and licensed motor carrier to transport Mr. Arsenault's property. The Court turns back to the Contract to see if this contract term is stated unambiguously.

On its face, the Contract's express terms do not show that having fully insured and licensed transportation was part of the agreed-upon bargain. The Contract does not reference insurance or being insured. *See Contract* at 1-3. It likewise does not include any references to licenses or licensure. *See id.* Given this lack of ambiguity,

the Court now turns to One Call's position that while "there is no integration clause, all the essential terms are set forth in Exhibit A [the contract], and there is no facial ambiguity.  Thus, the parol evidence rule applies."  *Def.'s Reply* at 2.

### 3.    Parole Evidence Rule and Extrinsic Evidence

"The parol evidence rule 'operates to exclude from judicial consideration extrinsic evidence offered to vary, add to, or contradict the terms of an integrated written agreement.'"  *Brown Dev. Corp. v. Hemond*, 2008 ME 146, ¶ 13, 956 A.2d 104 (quoting *Clarke v. DiPietro*, 525 A.2d 623, 625 (Me. 1987)).  Whether the parol evidence rule applies "is contingent on an initial finding that the contract at issue is integrated."  *Id.*

"A contract may be completely or partially integrated, and the degree of integration will impact the scope of permissible extrinsic evidence."  *Id.* (citations omitted).  "Whether or not a contract is integrated is a question of law."  *Id.*  "If a contract is integrated, evidence offered to alter unambiguous language will be excluded by the rule.  Where the agreement is partially integrated, extrinsic evidence will be admissible if the additional terms are consistent with the written terms."  *Id.* ¶ 14 (citations omitted).

This rule extends to evidence of oral conditions.  *Id.* ¶ 15.  "Where the parties to a written agreement agree orally that performance of the agreement is subject to the occurrence of a stated condition, the agreement is not integrated with respect to the oral condition."  *Id.* (citing *Paine v. Paine*, 458 A.3d 420, 421 (Me. 1983) (quoting Restatement (Second) of Contracts § 217).  "Consideration of oral conditions is not barred by the parol evidence rule unless they 'in a real sense contradict' or are

'repugnant to the conditions or terms' of the written contract." *Id.* (quoting *Rogers v. Jackson*, 2002 ME 140, ¶ 11, 804 A.3d 379).

Here, the Contract does not include an integration clause, which would have been a clear signal of the parties' intentions to have the written contract represent the entirety of their bargain. *See Portland Valve*, 460 A.3d 1383 at n.5 ("Where . . . in the final written contract the parties have expressly agreed that the contract fully integrates their understandings, the contract must be construed independently of extrinsic evidence"). However, the Court could still find that the Contract is fully integrated if the written agreement appears comprehensive and final, thereby limiting the relevance of any oral agreements. *See Steinke v. Sungard Fin. Sys., Inc.*, 121 F.3d 763, 770 (1st Cir. 1997) ("In determining whether an agreement is integrated, a court must compare both the alleged oral and written agreements and must determine whether the parties, situated as were the ones to the contract, would naturally and normally include the one in the other if it were made" (internal quotation marks omitted)); *General Elec. Capital Corp. v. Ford Motor Credit Co.*, 1992 U.S. Dist. LEXIS 19715, at*10 (D. Me. 1992) ("An 'integrated' writing is one that contains the final and complete expression of the parties with respect to any term of their agreement").

The Contract states that One Call will arrange the transportation "by a property goods motor carrier within [their] network." *Contract* at 1, 3. The Contract does not define what their "network" is or who those motor carriers are. However, the Court does not need to wade into the issue of this term's potential ambiguity

because Mr. Arsenault is not alleging that One Call breached the parties' Contract by hiring an out-of-network motor carrier.  Instead, the complaint asserts that One Call breached the Contract through its "failure to provide licensed and insured transportation." *Compl.* ¶ 13.  The Court therefore concludes that whatever intrinsic ambiguity may exist within the Contract, it is fully integrated as to the gravamen of Mr. Arsenault's precise claim.  Some inherent ambiguity flows from the use of all language from word choices alone, but this is not sufficient to resort to outside evidence of intention for an otherwise complete and comprehensive contract.

Even if the Court were to accept Mr. Arsenault's ambiguity argument, the Court finds the result to be the same.  "Once ambiguity is found then extrinsic evidence may be admitted and considered to show the intention of the parties." *Portland Valve*, 460 A.3d at 1388 n.5 (citing *Palmer v. Nissen*, 256 F. Supp. 497, 503 (D. Me. 1966); and *Pasquale*, 388 A.2d at 85).  However, Maine law provides that extrinsic evidence of additional terms must be "consistent with the written terms." *Hemond*, 2008 ME 146, ¶ 14 (citations omitted).  Extrinsic evidence of additional oral conditions are "not barred by the parol evidence rule unless they 'in a real sense contradict' or are 'repugnant to the conditions or terms' of the written contract." *Id.* ¶ 15 (quoting *Rogers*, 2002 ME 140, ¶ 11).

Here, the extrinsic evidence Mr. Arsenault supplies relates only to "transportation services <u>in Maine</u>."   *Pl.'s Opp'n* at 2 (emphasis supplied).  Mr. Arsenault says One Call falsely assured him by telephone and email that it and its drivers and carriers were fully licensed and insured.  *Compl.* ¶¶ 8, 17.  Mr. Arsenault

next directs the Court to One Call's website, where One Call advertises the following terms: "We pledge to meet all the requirements for transportation services in Maine. Rest assured, all our drivers are licensed, insured and knowledgeable …. Our expert drivers understand how to handle the Maine terrain and abide by all laws regarding hauling larger items." *Pl.'s Opp'n* at 2.  One Call's representation—"Rest assured, all our drivers are licensed, insured and knowledgeable"—confirms that One Call is making representations about contracts for transportation services in Maine involving its drivers.  But the contract here did not concern transportation services by One Call in Maine with One Call's drivers.  It involved One Call's brokerage services, did not call for One Call's drivers to transport the Tiny House, and did not involve transportation services exclusively in Maine.  Thus, even if the Court were to stretch the language of the Contract to find ambiguity, the parol evidence Mr. Arsenault proffers could not be considered pursuant to the parol evidence rule because it conflicts with the essential terms of the agreement and is repugnant to the agreement itself.  *See Rogers*, 2002 ME 140, ¶ 11.

The Court concludes (1) that Mr. Arsenault has not stated a cognizable breach of contract claim against One Call because the complaint does not contain allegations that constitute a breach of the written contract, (2) that the written contract is not ambiguous as to the gravamen of his complaint, (3) that where the contract is fully integrated and comprehensive, parol evidence should not be resorted to for the purpose of divining the parties' intentions, and (4) that the parol evidence offered by

Mr. Arsenault contradicts the express terms of the fully integrated contract and is thus barred under the parol evidence rule.

### B.    Preemption

The FAAAA preempts any state law, regulation, or other provision "related to a price, route, or service of any motor carrier . . . or any motor private carrier, broker, or freight forwarder with respect to the transportation of property."  49 U.S.C. § 14501(c)(1); *see also Am. Trucking Ass'ns, Inc. v. City of L.A.*, 569 U.S. 641, 648-49 (2013) (same).

The U.S. Circuit Court of Appeals for the First Circuit has stated that:

> The Supreme Court has identified the dual objectives that account for this broad reach: to "ensure that the States would not undo federal deregulation with regulation of their own," *Rowe* [*v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 368 (2008)] (quoting *Morales* [*v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992)]; and to avoid "a patchwork of state service-determining laws, rules, and regulations," *id.* at 373[].  In this manner, Congress sought to "help[ ] ensure transportation rates, routes, and services that reflect 'maximum reliance on competitive market forces,' thereby stimulating 'efficiency, innovation, and low prices,' as well as 'variety' and 'quality.'" *Id.* at 371, [] (quoting *Morales*, 504 U.S. at 378 []).

*Schwann v. FedEx Ground Package Sys., Inc.*, 813 F.3d 429, 436 (1st Cir. 2016).

"To trigger preemption under the FAAAA, a state law must 'relate[] to a price, route, or service' of a motor carrier." *Mass. Delivery Ass'n v. Coakley*, 769 F.3d 11, 17 (1st Cir. 2014) (quoting 49 U.S.C. § 14501(c)(1)).  "The 'related to' test is purposefully expansive." *Id.* at 18.  "Under this rubric, a state statute is preempted if it expressly references, or has a significant impact on, carriers' prices, routes, or services." *Id.* at 17-18 (citing *Morales*, 504 U.S. at 388).

24

The Court of Appeals for the First Circuit wrote that "the Supreme Court highlighted the breadth of the test when it held that a common law claim for breach of an implied covenant 'relates to' airlines' prices, routes, or services," when it concluded a frequent flyer program was connected to airline prices because the mileage credits could be redeemed for tickets and upgrades and was connected to services like access to flights and higher service categories. *Id.* (discussing *Northwest, Inc. v. Ginsberg*, 572 U.S. 273, 284 (2014)). A "state law may be preempted even if it is indirectly or generally applicable." *Id.* at 20 (quoting *Bower v. EgyptAir Airlines Co.*, 731 F.3d 85, 95 (1st Cir. 2013)).

That said, the scope of FAAAA preemption is not unlimited. "State laws whose effect is only 'tenuous, remote, or peripheral' are not preempted." *Id.* at 18 (quoting *Rowe*, 552 U.S. at 371). In making this determination, district courts in the First Circuit are to "look[] to the logical effect that a particular scheme has on the delivery of services or the setting of rates." *N.H. Moto Transp. Ass'n v. Rowe*, 448 F.3d 66, 82 n.14 (1st Cir. 2006).

49 U.S.C. § 14501(c)(1)'s second phrase—"with respect to the transportation of property"—further limits the broad scope of FAAAA preemption. "The scope of FAAAA preemption would be far broader if it encompassed state statutes that affected motor carriers in any capacity. Instead, the FAAAA is carefully tailored to preempt only those statutes that affect a motor carrier's transportation of property." *Coakley*, 769 F.3d at 23. "This excludes, for example, statutes that affect a motor carrier's transportation of passengers, statutes that affect a motor carrier's

transportation of garbage, or, like in *Dan's City* [*Used Cars, Inc. v. Pelkey*, 569 U.S. 251 (2013)], statutes that relate to motor carriers after the transportation of property has ended." *Id.*  Other examples include "laws against gambling and prostitution," and "state regulation that broadly prohibit certain forms of conduct and affects, say, truckdrivers, only in their capacity as members of the public (e.g., a prohibition on smoking in certain places)." *Schwann*, 813 F.3d at 436 (internal citations and punctuation omitted) (quoting *Morales*, 504 U.S. at 390; and *Rowe*, 552 U.S. at 375).

Ultimately, the First Circuit says, "[e]xactly where the boundary lies between permissible and impermissible state regulation is not entirely clear," *id.* at 437, but "one must move quite far afield to confidently reach that limit." *Id.* at 436 (citing *DiFiore v. Am. Airlines, Inc.*, 646 F.3d 81, 86-87 (1st Cir. 2011)).

The Court now turns to Count II of Mr. Arsenault's complaint.

### 1.   Maine Unfair Trade Practices Act

Count II of Mr. Arsenault's complaint alleges that One Call violated the Maine Unfair Trade Practices Act (MUTPA), 5 M.R.S. § 205-A *et seq.*, which makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." 5 M.R.S. § 207.  State safety regulation, insurance requirements, and the intrastate shipment of goods are specifically exempt from this provision pursuant to 49 U.S.C. 14501(c)(2)-(3).

One Call contends the FAAAA preempts the MUTPA claim because it goes "directly to the services rendered by a transportation broker and seeks to dictate the way One Call, as a broker, selects a motor carrier, and [that] imposing liability under Maine's Unfair Trade Practices Act has the potential to affect the services of One

Call." *Def.'s Mot.* at 7.  Thus, One Call avers, "Maine's Unfair Trade Practices Act meets the 'related to' test, and in this case, it concerns the transportation of property, as Plaintiff seeks to recover damages from alleged representations regarding the licensure and insurance status of the motor carrier." *Id.* at 7-8.

Mr. Arsenault counters that his "grievances concern primarily the quality and reliability of the service promised and paid for, not the aspects of service regulation that the Motor Carrier Act chiefly aims to deregulate to foster competition." *Pl.'s Opp'n.* at 5.  Mr. Arsenault also analogizes to *Ted's of Fayville*, arguing that preemption only applies if the law at issue "also concerns a motor carrier's transportation of property." *Id.* at 6. (quoting *Ted's of Fayville*, 452 F. Supp. 3d at 4). In Mr. Arsenault's view, "the violation of the Maine Unfair Trade Practices Act occurred prior to the transportation," so it "is not centered around the actual transportation of the tiny home, but rather whether the advertisements and representations . . . were deceptive and unfair trade practices." *Id.* at 7.

One Call distinguishes *Ted's of Fayville* because it "dealt with storage fees" while "the present claims deal with the insurance representations by One Call as they relate to its carriers." *Def.'s Reply* at 5.  As a result, One Call says, the present "claims relate to services provided by One Call, as they involve the representations by One Call as to the insurance status of its carriers[, which] . . . impacts the way in which brokers investigate and select transportation carriers." *Id.*

While Mr. Arsenault is correct that his MUTPA claim revolves around whether advertisements and representations were deceptive, not the physical transportation

27

of his property, he is only right as far as he goes.  In interpreting the Airline Deregulation Act of 1978's preemption clause, the Supreme Court held that the clause "stops States from imposing their own substantive standards with respect to rates, routes, or services, but not from affording relief to a party who claims and proves that an airline dishonored a term the airline itself stipulated."  *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 222-23 (1995).  The Court continued: "This distinction between what the State dictates and what the airline itself undertakes confines courts, in breach-of-contract actions, to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement."  *Id.* at 233.  Justice Stevens dissented in part, explaining that he disagreed "with the Court's disposition of their consumer-fraud claims.  In [his] opinion, private tort actions based on common-law negligence or fraud, or on statutory prohibition against fraud, are not preempted."  *Id.* at 235 (Stevens, J., concurring in part and dissenting in part).  Justice Stevens' dissent underscores the holding of the majority of the Court, namely that statutory consumer-fraud claims, like the one Mr. Arsenault brings here, are preempted.[4]

---

[4]      Mr. Arsenault brings a claim under the FAAAA, not the Airline Deregulation Act.  This, however, provides no solace to his position.  The FAAAA borrowed its preemption language from the Airline Deregulation Act.  *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 256 (2013).  Given the identical language in the statutes—"related to a price, route or service"—the Supreme Court's decisions expansively interpreting the parallel language in the Airline Deregulation Act informed its reading of the FAAAA in *Rowe v. New Hampshire Motor Transp. Assn.*, 552 U.S. 364, 370 (2008).  *Dan's City*, 569 U.S. at 260; *see Mass. Delivery Ass'n v. Coakley*, 769 F.3d 11, 18 (1st Cir. 2014) ("Congress used the same language as found in the ADA when writing the FAAAA and intended to incorporate the *Morales* Court's 'broad preemption interpretation.'  As such, the Court has applied the same sweeping test to the 'related to' language in the FAAAA" (internal citations omitted) (quoting *Rowe*, 552 U.S. at 370; and discussing *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992))).

Even so, the First Circuit has concluded that a "court must engage with the real and logical effects of the state statute, rather than simply assigning it a label." *Coakley*, 769 F.3d at 20; *accord Tobin v. Fed. Exp. Corp.*, 775 F.3d 448, 455-56 ("The *Morales* framework 'does not permit us to develop broad rules concerning whether certain types of common-law claims are preempted by the ADA'" (quoting *Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1433 (7th Cir. 1996))). In other words, courts are to look "to the logical effect that a particular scheme has on the delivery of services or the setting of rates." *Coakley*, 769 F.3d at 21 (citing *Rowe*, 448 F.3d at 82 n.14 (1st Cir. 2006), *aff'd*, 552 U.S. 364 (2008)). Through this "individualized assessment of the facts underlying each case," courts can "determine whether a particular state-law claim will have a forbidden effect." *Tobin*, 775 F.3d at 456 (citing *Coakley*, 769 F.3d at 20).

While MUTPA does not expressly reference either the price or service of motor carrier brokers, it still has a connection with both. *See Coakley*, 769 F.3d at 17-18. If MUTPA is not preempted in the case at hand, for example, One Call could face liability for its alleged misrepresentations about whether its motor carriers are insured and licensed. This potential liability would require One Call to ensure that any motor carrier whose services One Call brokers is licensed and insured. The additional due diligence required to corroborate claims about motor carriers' certifications would markedly change the service the broker is providing from broker to guarantor. Moreover, it would compel One Call to broker transportation services with fewer motor carriers. In addition, expanding transportation brokers'

responsibilities and narrowing their range of potential transportation companies would necessarily affect the price and service of motor carrier brokers. Given these logical effects, the Court concludes the MUTPA claim has more than a "tenuous, remote, or peripheral" impact on prices, routes, or services. *Rowe*, 552 U.S. at 371 (quoting *Morales*, 504 U.S. at 390); *see Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 232-33 (1995) (preempting plaintiffs' claims under state-imposed consumer protection standards).

The remaining question before the Court is thus whether One Call's alleged misrepresentations relate to a service of a motor carrier broker "with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). The Court concludes that it does. One Call's misrepresentation, as Mr. Arsenault has alleged it, was that it would only contract with motor carriers to transport Mr. Arsenault's property if they had the necessary insurance and license. Put differently, One Call's promise was about the characteristics of the motor carrier that would transport the property, thus fitting squarely within the "with respect to transportation of property" requirement. *See* 49 U.S.C. § 13102(23) ("The term 'transportation' includes—(A) a motor vehicle . . . of any kind related to the movement of passengers or property . . . and (B) services related to that movement . . .").

Taken together, the Court concludes Mr. Arsenault's claim under MUTPA is preempted by the FAAAA as related to a price and service of a motor carrier broker with respect to the transportation of property. *See* 49 U.S.C. § 14501(c)(1). As the

claim is preempted, dismissal is warranted and the Court grants dismissal accordingly.

### 2.   Negligence[5]

In his complaint, Mr. Arsenault alleges that One Call owed him implied duties of care, good faith, and fair dealing, *Compl.* ¶¶ 23-24, but "breached" them "by hiring a vendor who permitted unqualified, unlicensed, or uninsured drivers to perform work on behalf of the Defendant." *Id.* ¶ 25. Mr. Arsenault also alleges One Call breached the duties "by failing to be insured against its loss of [his] Tiny Home." *Id.* ¶ 28. Together, the argument goes, these breaches amount to One Call acting negligently. *Id.* ¶ 26.

One Call takes issue with Mr. Arsenault saying it acted negligently via its "agent"; it argues that it "acted solely as the broker arranging transportation of the goods." *Defs.' Mot.* at 8. Given this, One Call says, "Plaintiff's allegations of negligence go directly to the services rendered by a transportation broker and seek to dictate the way One Call, as a broker, selects a motor carrier." *Id.* One Call represents that "[s]everal Courts throughout the United States have held that negligence claims against brokers for damage to goods in transit are preempted by 49 U.S.C. § 14501(c)(1)." *Id.* at 9 (citing *Ameriswiss Tech., LLC v. Midway Line of Ill., Inc.*, 888 F. Supp. 2d 197 (D.N.H. 2012) (collecting cases)).

---

[5]   In ruling on Count Three, the Court addresses only the preemption issue raised by One Call, not whether there is a duty of good faith and fair dealing under Maine law outside of contracts governed by the Maine version of the Uniform Commercial Code or what duty One Call owed Mr. Arsenault apart from its contractual duties. *See McCurtain v. Morrill*, CV-05-072, 2007 Me. Super. LEXIS 96, at *11-12 (Me. Super. May 1, 2007).

In response, Mr. Arsenault insists the term "service" is interpreted so narrowly that "[n]egligence claims, which operate to impose a general duty of care on market participants across industries, are sufficiently attenuated from the regulation of prices, routes, or services in the transportation industry to avoid preemption." *Pl.'s Opp'n* at 4-5 (citing *Covenant Imaging, LLC*, 2021 U.S. Dist. LEXIS 49000, at *9). He argues that his "grievances concern primarily the quality and reliability of the service promised and paid for, not the aspects of service regulation that the Motor Carrier Act chiefly aims to deregulate to foster competition." *Id.* at 5. Therefore, Mr. Arsenault avers, "these claims are properly within the purview of state law and should not be dismissed on the grounds of preemption by the Motor Carrier Act." *Id.* at 6.

In support, Mr. Arsenault points to two cases: *Complete Coach Works* and *Covenant Imaging*. Unfortunately for Mr. Arsenault, neither case comports with what First Circuit caselaw requires. The *Complete Coach Works* Court concluded that the "Plaintiff's negligence and fraud claims merely s[ought] to enforce a normal duty of care and a duty not to defraud one's customers[, which] has nothing to do with the service offerings. . . or the carriers with which it contracts." *Complete Coach Works*, 2011 U.S. Dist. LEXIS 156417, at *4. Pursuant to that conclusion, the *Complete Coach Works* Court denied the motion to dismiss, which was based on the ground of express federal preemption.

*Complete Coach Works* is readily distinguishable. The holding in that Northern District of California case is premised on the Ninth Circuit's narrow

interpretation of the term "service." *See Bower v. EgyptAir Airlines Co.*, 731 F.3d 85, 94 (1st Cir. 2013) ("Most notably, the Ninth Circuit in *Charas* [*v. Trans World Airlines*, 160 F.3d 1259 (9th Cir. 1998)] narrowly interpreted 'service' to track closely to 'price' and 'route'"). However, the First Circuit, discussing this narrow interpretation, explicitly stated that it "decline[s] to follow that approach." *Id.* As this district court must follow the law of the First Circuit, the *Complete Coach Works* Court's interpretation premised on a dissonant and restrictive interpretation of service is of no precedential or persuasive value.

In *Covenant Imaging*, the other case Mr. Arsenault relies on, the district court concluded that "negligence claims, which operate to impose a general duty of care on market participants across industries, are sufficiently attenuated from the regulation of prices, routes, or services in the transportation industry to avoid preemption." *Covenant Imaging*, 2021 U.S. Dist. LEXIS 49000, at *19.

In the First Circuit, *Covenant Imaging* suffers a similar flaw to *Complete Coach Works*. There, a district court in the Second Circuit developed a broad rule concerning whether a certain type of common law claim, negligence, was preempted by the FAAAA. *See id.* However, the First Circuit has concluded that a "court must engage with the real and logical effects of the state statute, rather than simply assigning it a label." *Coakley*, 769 F.3d at 20; *see also Tobin*, 775 F.3d at 455-56 ("The *Morales* framework 'does not permit us to develop broad rules concerning whether certain types of common-law claims are preempted by the ADA'" (quoting *Travel All Over the World*, 73 F.3d at 1433)). Accordingly, a holding instituting a broad rule

33

about all negligence claims goes against the First Circuit's interpretation of ADA and FAAAA preemption law, undermining its persuasive value.[6] Instead, following the First Circuit's guidance, this Court looks "to the logical effect that a particular scheme has on the delivery of services or the setting of rates." *Coakley*, 769 F.3d at 21 (citing *Rowe*, 448 F.3d at 82 n.14). Through this "individualized assessment of the facts underlying each case," the Court can "determine whether a particular state-law claim will have a forbidden effect." *Tobin*, 775 F.3d at 456 (citing *Coakley*, 769 F.3d at 20).

The first of Mr. Arsenault's allegations is that One Call breached the implied covenants of care, good faith, and fair dealing "by hiring a vendor who permitted unqualified, unlicensed, or uninsured drivers to perform work on behalf of the Defendant." *Compl.* ¶ 25. In other words, Mr. Arsenault's first theory of negligence is a so-called negligent hiring claim.[7] *See Robinson v. Cedars Nursing Care Ctr., Inc.*, 2012 Me. Super. LEXIS 154 at *7-8 (citing *Dexter v. Town of Norway*, 1998 ME 195, ¶ 10, 715 A.2d 169); *Sebago Land Developers, Inc. v. Crum & Forster*, No. 2:23-cv-00320-JAW, 2024 U.S. Dist. LEXIS 159322, at *26 (D. Me. Sept. 5, 2024).

---

[6]  "[I]n addition to cases interpreting the FAAAA, we look to cases interpreting the Airline Deregulation Act." *Rowe*, 448 F.3d at 75.

[7]  The Court does not address whether the alleged facts support a negligent hiring claim under Maine law or whether a negligent hiring claim under Maine law extends to a broker's recommendation to someone who did the actual hiring because One Call only moves to dismiss on the ground of preemption.

"The Law Court has recognized negligent hiring as a tort but only in the context of hiring an independent contractor as stated in section 411 of the Restatement (Second) of Torts." *Robinson*, 2012 Me. Super. LEXIS 154 at *7-8 (citing *Dexter*, 1998 ME 195, ¶ 10); *see Sebago Land Developers*, 2024 U.S. Dist. LEXIS 159322, at *26. This section of the Restatement contemplates employer liability for "physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor" in two hiring contexts: if an employer retained the independent contractor "to do work which will involve a risk of physical harm unless it is skillfully and carefully done" or "to perform any duty which the employer owes to third persons." RESTATEMENT (SECOND) OF TORTS § 411 (Am. Law Inst. 1965). Neither theory captures the facts alleged here: a broker's recommendation to a customer to hire a transportation company to transport personal property.

34

The First Circuit has not addressed whether a negligent hiring claim could avoid FAAAA preemption. For that reason, the Court looks to other authority within the First Circuit to determine if it is persuasive as applied to the present facts.

In the sole case to address this issue in the First Circuit, *Skowron v. C.H. Robinson Co.*, 480 F. Supp. 3d 316, 319 (D. Mass. 2020), the district court found that the plaintiff's negligent hiring claim was "undoubtedly 'related to' [Defendant]'s services as a transportation broker." *Id.* at 321. It reached that conclusion because the claim derived from the broker's "choice of a motor carrier, 'an action which indisputably is a "bargained-for or anticipated provision of labor" from a [transportation] broker.'" *Id.* (modification in original) (cleaned up). The *Skowron* Court also concluded the claim "indisputably concern[ed] the transportation of property" because it was premised on the broker's service of arranging to move the plaintiff's property, "an action which fits squarely within the FAAAA's definition of 'transportation.'" *Id.*

The Court finds *Skowron*'s reasoning persuasive and concludes that One Call's selection of a motor carrier to move Mr. Arsenault's Tiny House is both related to their service as a transportation broker and concerns the transportation of his property. *Id.*[8] Having concluded that Mr. Arsenault's negligent hiring claim is

---

[8]    District courts in other circuits have drawn the same conclusions. *See also Finley v. Dyer,* No. 18-78, 2018 U.S. Dist. LEXIS 182482, at *12-13 (N.D. Miss. Oct. 24, 2018) (finding a claim related to selection of freight carrier to be preempted); *Creagan v. Wal-Mart Transp., LLC*, 354 F. Supp. 3d 808, 813 (N.D. Ohio 2018) (finding a broker's alleged negligence in its choice of motor carrier to be preempted).

related to a broker service and concerns the transportation of property, FAAAA preemption applies unless one of the FAAAA's preemption exceptions applies.

Potentially relevant here is 49 U.S.C. § 14501(c)(2)(A), which states that the FAAAA's general rule of preemption "shall not restrict the safety regulatory authority of a State with respect to motor vehicles . . . or the authority of a State to regulate motor carriers with regard to minimum amounts of financial responsibility relating to insurance requirements and self-insurance authorization."

Facing this very question, the *Skowron* Court wrote:

"Historically, common law liability has formed the bedrock of state regulation, and common law tort claims have been described as a critical component of the States' traditional ability to protect the health and safety of their citizens." *See Finley*, 2018 WL 5284616, at *6 (citations and internal quotation marks omitted). Negligent hiring claims are part of this bedrock, and as applied against transportation brokers, they help to protect citizens from injuries caused by motor vehicles. The imposition of liability ensures that a transportation broker exercises reasonable care in hiring an agent to operate a motor vehicle, i.e., that it does not arrange for a dangerous motor carrier to operate on highways.

*Skowron*, 480 F. Supp. 3d at 321-22 (citing *Finley*, 2018 U.S. Dist. LEXIS 182482, at *14-16; and *Owens v. Anthony*, No. 11-0033, 2011 U.S. Dist. LEXIS 139961, at *11 (M.D. Tenn. Dec. 6, 2011)). Based on this reasoning, the *Skowron* Court concluded that the common law of negligence underpinning the plaintiff's negligent hiring claim against a transportation broker was "genuinely responsive to safety concerns respecting motor vehicles and thus falls within the safety regulatory authority of the states." *Id.* at 321.

The Court also finds this analysis persuasive.  One Call arranged for a third party to pick up Mr. Arsenault's house and deliver it to his Maine address.  This third party, Yaniel, necessarily would have had to drive on Maine roads, and Maine has an interest in regulating who drives on its roads, how they do so, and what they drive. Maine, like other states, defends that interest through its traditional state police power over safety; this extends to creating liability for tortious behavior.  This in general bears the requisite connection with motor vehicle safety regulation.

However, even if the state has a safety interest in the operation of common carriers within its boundaries, to determine whether a negligent hiring claim would survive preemption, the Court must still examine the complaint to determine the relationship, if any, of the specific allegations of negligence with the safety exception. Mr. Arsenault makes three allegations of negligent conduct by One Call: (1) that One Call breached its duty of due care "by hiring a vendor who permitted unqualified, unlicensed, or uninsured drivers to perform work on behalf of [One Call]," (2) that One Call "directly or through its agents, breached that duty of care by causing the Plaintiff's home to be damaged during its transport," and (3) that One Call "breached its duties of care, good faith, and fair dealing by failing to be insured against its loss of Plaintiff's Tiny Home."  *Compl.* ¶¶ 25, 27, 28.

Although a court ruling on a motion to dismiss is required to accept the allegations in a complaint, the Court is troubled by some of the language in Mr. Arsenault's allegations.  First, Mr. Arsenault avers that One Call "hir[ed] a vendor," but the Contract between Mr. Arsenault and One Call makes it clear that Mr.

Arsenault, not One Call, hired the transportation company, Yaniel. Second, Mr. Arsenault claims that Yaniel was "perform[ing] work on behalf of [One Call]." However, the other allegations in the complaint confirm that while Yaniel was identified by One Call, it was working for the customer, Mr. Arsenault. Third, Mr. Arsenault alleges that One Call caused the Plaintiff's Tiny Home to be damaged, but there is no allegation that One Call had anything to do with the actual transport. The only basis for liability on this allegation is that because One Call brokered the transport, Yaniel became One Call's agent for purposes of carrying out the transportation, a proposition that the Court views with skepticism. Finally, Mr. Arsenault alleges that One Call should have carried insurance that would have paid him for losses caused by Yaniel, again a dubious proposition. Thus, the Court is concerned about the support Mr. Arsenault could present to justify the allegations in the negligence count of the complaint. Boiled down, these factual allegations may be grounded on assertions of law that the Court is not required to accept as true.

Nevertheless, the Court's job in evaluating the motion to dismiss is narrow, and the Court concludes that it would be wiser to accept these mixed allegations of fact and law and allow Count III to proceed forward, subject to further development by the parties. Thus, for example, the allegation that Yaniel had unqualified, unlicensed, uninsured drivers, if true, fits squarely within the state of Maine's interest in providing for the safety of people on its roads and, thus, an exception to preemption sufficient to dismiss the motion on Count III. Whether the law allows

Mr. Arsenault to make a claim against One Call for Yaniel's deficiencies is not raised by the motion and is better left for another day.

Absent that, the Court is unable to determine whether the claim would be preempted by the FAAAA. This is particularly true in the First Circuit, where the "court must engage with the real and logical effects of the state statute, rather than simply assigning it a label." *Coakley*, 769 F.3d at 20; *see also Tobin v. Fed. Express Corp.*, 775 F.3d at 455-56 ("The *Morales* framework 'does not permit us to develop broad rules concerning whether certain types of common-law claims are preempted by the ADA'" (quoting *Travel All Over*, 73 F.3d at 1433)). As "Congress' clear purpose in § 14501(c)(2)(A) is to ensure that its preemption of States' economic authority over motor carriers of property, § 14501(c)(1), 'not restrict' the preexisting and traditional state police power over safety," the Court concludes Mr. Arsenault's negligent hiring claim against One Call is not necessarily preempted by the FAAAA, based on the allegations of the complaint that the Court has accepted as true. *City of Columbus v. Ours Garage & Wrecker Serv., Inc.*, 536 U.S. 424, 439 (2002); *cf. Miller v. C.H. Robinson Worldwide, Inc.*, 976 F.3d 1016, 1026-31 (9th Cir. 2020); ("We hold that negligence claims against brokers, to the extent that they arise out of motor vehicle accidents, have the requite 'connection with' motor vehicles. Therefore, the safety exception applies"); *but see Aspen Am. Ins. Co. v. Landstar Ranger, Inc.*, 65 F.4th 1261, 1270-72 (11th Cir. 2023) (finding "a mere indirect connection between state regulations and motor vehicles will not invoke the FAAAA's safety exception").

Consequently, the Court dismisses without prejudice One Call's motion to dismiss for failure to state a claim in Count Three of the complaint on the preemption issue only.

## VI.    CONCLUSION

The Court grants in part and dismisses in part One Call Logistic LLC's Motion to Dismiss for Failure to State a Claim (ECF No. 4).

The Court GRANTS the motion as to Mr. Arsenault's Count One, the breach of contract claim, and Count Two, Maine Unfair Trade Practices Act claim, and dismisses Counts One and Two.  The Court DISMISSES without prejudice the motion as to Count Three, the negligent hiring claim.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 10th day of September, 2024